**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KAREN WILCOX | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. AW-07-2899 |
| | ) | |
| PRINCE GEORGE'S COUNTY, | ) | |
| FIRE/EMS DEPARTMENT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before this Court is Defendant's Motion for Summary Judgment (Doc. No. 25) and Motion to Strike (Doc. No. 30.)  Plaintiff Karen Wilcox brought this case against her former employer, Prince George's County Fire/EMS Department, alleging discrimination in employment based on gender and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e(2)(a), (3)(a) (hereinafter "Title VII").  The Court has reviewed the entire record as well as the pleadings with respect to this motion and finds that no hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated more fully below, the Court will **GRANT IN PART and DENY IN PART** Defendant's Motion to Strike and **GRANT** Defendant's Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the Plaintiff.  In an August 28, 2008, Memorandum Opinion the Court dismissed several counts of the Plaintiff's complaint. The only claims remaining for consideration in this summary judgment motion are: "(A) Count I, Plaintiff's claim of gender discrimination involving a July 2005 transfer; (B) Count II, Plaintiff's claim of gender discrimination arising from the denial of training and educational opportunities

in July 2005; and (C) Count III, Plaintiff's retaliation claim based on the denial of training and educational opportunities in July 2005." (Mem. Op. 14).

As relevant factual background, Plaintiff Karen Wilcox ("Wilcox" or "Plaintiff"), an African-American female, was hired by Prince George's County, Maryland's Fire/EMS department as a Fighfighter/EMT on February 8, 1993, until her separation on March 31, 2006. It is undisputed that Wilcox was considered a "good to outstanding employee during her tenure with the Fire Department." (Doc. No. 25, 6.)  In 1996 and 1999, Plaintiff suffered spinal damage as a result of on-the-job injuries, which she underwent surgery for in March 2004.  Upon returning to work on September 7, 2004, Plaintiff was placed on light duty status and assigned to various administrative positions until her separation from the Fire Department in March 2006. Light duty status means that the employee was "injured in the line of duty" or pregnant and "unable to perform the full duties of a firefighter." (*Id.* 6.)

Count I of Plaintiff's gender discrimination claim involves her assignment to a Staffing Officer position in July 2005 after she served as an Executive Assistant to Acting Lieutenant Colonel, Carla Blue ("Blue").  Plaintiff applied for the Staffing Officer Position in May 2005. She explained that she contacted Major John Fletcher to follow up on the position, who told her that "he didn't know" when the position would be filled or who would be selected. (Pl.'s Dep. 86:4-17).  In an affidavit prepared after her deposition, Plaintiff states that she was "subsequently notified in mid-June by then Major John Fletcher that [she] was not selected for the position. (Pl.'s Aff. 2:8.)  According to Plaintiff she interpreted Major Fletcher's comments to mean that she was not selected and thus she "no longer desired the Staffing Officer Position." (*Id.*)  On July 12, 2005, Plaintiff received a telephone call from Blue informing her that she had been transferred to the Staffing Officer position.  Plaintiff claims that she spoke directly with Blue,

who used an intimidating tone towards Plaintiff and questioned Plaintiff about filing her EEO complaint.  Defendant contends, however, that Plaintiff did not speak directly with Blue but instead received a voicemail from Blue.

Count II involves two separate incidents.  First, Plaintiff alleges that she sought approval from Blue to attend a July 11, 2005, Fire Inspector I Class that would last approximately three days, which Blue initially granted.  However, in her deposition testimony Wilcox states that Blue informed her on July 8, 2009,—the Friday before the class was scheduled to begin—that she "was not going to be able to go to the class because [Blue] was going to be out of the office and to check to see if [the class was offered] another time." (Pl.'s Dep. 44:18-21.)  Wilcox contends that she informed Blue that no other classes were scheduled.  (*Id.* 45:1-2.)  However, Defendant contends that the Fire Inspector I Class is given several times a year and that Plaintiff failed to reschedule.  (Doc. No. 25, 6.)  Second, Plaintiff claims that she was prevented from applying to a Graduate Fire/EMS Executive Leadership Program offered at John Hopkins University, which is a program wholly separate from the Defendant.  The admission criteria required all applicants to "(1) be in a supervisory position or at an executive level in their organization; (2) be endorsed by their chief or CEO; (3) possess a bachelor's degree or its equivalent from an accredited college or university together with a successful academic record; and (4) meet entrance criteria established by the University." (Pl.'s Ex. 14.)  On June 28, 2005, Wilcox requested a letter of endorsement from Fire Chief Lawrence H. Sedgwick, Jr., to apply to the program.  Plaintiff's application was placed on hold due to an impending separation from the department, which in Defendant's view would have made Plaintiff no longer affiliated with its EMS Department. Plaintiff received notification of her separation from the Department on June 15, 2005, which was subsequently appealed.  Plaintiff was not officially separated from her employment with the

Defendant until March 31, 2006, which was nearly ten months after seeking the letter of endorsement from the Fire Chief.    The endorsement letter was returned to Wilcox on July 1, 2005, with a note attached that stated Plaintiff's request was on hold pending resolution of her separation appeal.  (Pl.'s Dep. 51:1-17.)

Lastly, Count III of the complaint alleges that Defendant's denial of the educational and training opportunities discussed above was in retaliation for Plaintiff filing an EEO Compliant against the Fire Department.    Plaintiff contacted the Prince George's County Office of Professional Standards/EEO to make a complaint for discrimination on July 1, 2005.  On July 13, 2005, Plaintiff filed a formal complaint with an internal EEO officer, Eugene Jones ("Jones").

## DEFENDANT'S MOTION TO STRIKE

As a preliminary matter the Court will address Defendant's Motion to Strike.  Federal Rule of Civil Procedure 12(f) states that "[u]pon ... motion made by a party …, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Furthermore, Federal Rule of Civil Procedure 56(e) states that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Accordingly, such affidavits cannot be conclusory or based on hearsay.  *Rohrbough v. Wyeth Lab., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251-52 (4th Cir. 1991).  Moreover, a party cannot submit an affidavit solely for the purpose of creating a dispute of fact or which contradicts deposition testimony. *See Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999).

Plaintiff submitted an affidavit prepared subsequent to her deposition, as an exhibit to her opposition to Defendant's motion for summary judgment, which Defendant argues is Plaintiff's attempt to create a dispute of material fact.  Specifically Defendant argues that paragraph 4 of

Plaintiff's affidavit, in which Plaintiff states that she believed that Blue knew about her July 1st EEO complaint when Blue informed her on July 8th that she could not attend a scheduled training session, is pure speculation that would not be admissible in Court.  Plaintiff counters that she is entitled to draw an inference from the close temporal proximity, approximately one week, of her initial internal EEO complaint and Blue's e-mail stating that she would be unable to attend the training because of a scheduled conflict.  After a review of the materials filed in this case, the Court cannot find that Plaintiff's allegation, with respect to her belief, is entirely speculative. Therefore, the Court will not strike paragraph 4 of the Plaintiff's affidavit.

Defendant argues that paragraph 5 of the affidavit, in which the Plaintiff discusses that she should have received Acting Captain's pay, is immaterial because the Court already disposed of this issue.  Plaintiff argues that she included the paragraph to show a pattern or discrimination and that the harm or prejudice to the Defendant in including the reference is de minimums.  The Court finds that paragraph 5 is immaterial to the remaining claims in this case, and accordingly, strikes it from Plaintiff's affidavit.  Finally, Defendant contends that the Court should strike paragraph 8 in which Plaintiff states that she was notified by Major Fletcher that she was not selected for the position as unsupported and is merely Plaintiff's attempt to create a dispute as to whether her transfer was voluntary or involuntary.  Plaintiff argues this assertion merely clarifies her deposition testimony in which she stated that Major Fletcher told her that he didn't know who was selected or when the position would be filed.  Post-deposition affidavits must be carefully assessed to make sure that the later declaration does not contain the trappings of a self-serving effort to create a genuine dispute of fact.  Here, it appears that Plaintiff is using the affidavit to show that she interpreted Major Fletcher's response to mean that she was not selected for the position and as a result was no longer interested.  However, as Defendant argues this

allegation could and should have been provided in Wilcox's deposition testimony, and accordingly, the Court will strike paragraph 8 from her affidavit as it is inappropriate and self-serving.

## STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## ANALYSIS

In the absence of direct evidence of discrimination or retaliation, as is the case here, a plaintiff's claims for discrimination are analyzed under the burden-shifting proof scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). First, the plaintiff must

establish a prima facie case of discrimination or retaliation. *Id.* at 802. After establishing a prima facie case, the burden shifts to the Defendant to proffer a "legitimate, nondiscriminatory reason" for the challenged conduct. *Id.* Upon this showing, the plaintiff must prove by a preponderance of the evidence that the reasons stated by the employer are actually pretext for a discriminatory purpose. *Id.* at 804. A plaintiff can demonstrate pretext if in addition to satisfying a prima facie case there is "sufficient evidence . . . that the employer's asserted justification is false" or "unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

**I.    Count I-Gender Discrimination Arising from Plaintiff's July 2005 Transfer**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (2006). In order to establish a prima facie case of gender discrimination Wilcox must demonstrate that she: (1) belonged to a protected class; (2) performed her job duties satisfactorily; (3) suffered adverse employment action in spite of her satisfactory performance; and (4) was treated differently from similarly situated employees who are not members of the protected class. *Nichols v. Caroline County Bd. of Educ.*, 123 F. Supp. 2d 320, 325 (D. Md. 2000). Defendant does not dispute that Plaintiff meets the first two elements of her gender discrimination claims in Count I and Count II, but argues that the undisputed material facts demonstrate that Plaintiff has not satisfied the remaining elements.

In Count I, Plaintiff complains that her July 2005 transfer to a Staffing Officer position from the Executive Assistant to the Acting Lieutenant Colonel position was discriminatorily based on her gender. It is well established in the Fourth Circuit, that an adverse employment action "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.

*James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).  As articulated in Fourth Circuit precedent, "the mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action."  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citations omitted).  Instead, the reassignment must either cause some "significant detrimental effect" or result in a "decrease in compensation, job title, level of responsibility, or opportunity for promotion."  *Id.*  Therefore, generally "reassignment to a new position commensurate with ones salary does not constitute an adverse employment action . . . ."  *Id.*

Here, the Plaintiff contends in her opposition to the Defendant's motion, based on a affidavit she submitted after her deposition, that the Staffing Officer position was considered less prestigious than the Executive Assistant position she previously held because (1) she reported to a lower ranked personnel, (2) the position is generally held by lower ranked employees, and (3) she managed one, as opposed to five, divisions in the new position.  Plaintiff cites to *Brady v. Walmart Stores, Inc.*, 531 F.3d 127 (2nd Cir. 2008) and *Caussade v. Brown*, 924 F. Supp. 693 (D. Md. 1996) to support her position that a plaintiff need not suffer a decrease in salary where the transfer results in a "less distinguishable title."  However, this Court is bound by the precedent established by the Fourth Circuit that a plaintiff's transfer must lead to a decrease in title or compensation to be considered an adverse employment action.  The record clearly supports Defendant's contention that Wilcox retained her rank as Lieutenant Colonel and received the same salary and benefits when she was transferred to her new position.  (Pl.'s Dep. 64:13-18, 65:1-5.)  Moreover, in *Caussade*, this Court specifically held that the plaintiff had not suffered an adverse employment action because she was assigned to mange less units, making Wilcox's argument that the decrease in the number of divisions she managed unpersuasive to her

8

claim.   Lastly, Plaintiff's contention that the Staffing Officer position was less prestigious than her previous position is not supported in the record and appears to be her personal opinion asserted in the affidavit she prepared after her deposition.  Given that Plaintiff's rank and salary did not change, this Court finds the Staffing Officer position was not materially less prestigious or otherwise an adverse employment action.

Furthermore, Defendant argues that Wilcox's transfer cannot be considered discriminatory because she voluntarily applied for the position.  The record reflects that Wilcox applied for the Staffing Officer position on May 20, 2005, because, as she alleged in her deposition testimony, she "wanted to get out" of the Executive Assistant position and office.  (Pl.'s Dep. 65:6-22.)   Plaintiff argues in response that the transfer was not voluntary because, according to her affidavit, she interpreted Major Fletcher's comment that he did not know who would be selected or when the position would be filled to mean that she was not selected for the job and thus she was no longer interested.   As discussed above, the Court has stricken this averment from the affidavit.  In any event, there is no evidence that Plaintiff communicated this loss of interest to her employers.  Thus the Court finds that the record reflects that Defendant's decision to transfer Wilcox was based on her submission of an application for the position.  Therefore, Plaintiff further fails to establish that her July 2005 transfer was an adverse employment action.

Even if the Court were to find that Plaintiff suffered an adverse employment action, she still does not establish the last element of a prima facie case for discrimination.  Wilcox offers no evidence or argument that similarly situated persons who are not members of her protected class were treated differently.  Moreover, the Court is satisfied that Defendant's decision to transfer Plaintiff was non-discriminatory and based on Plaintiff's own application for the position.  Other

than alleging that she no longer wanted the position in her affidavit, Plaintiff has failed to show that Defendant's stated reason was merely pretext. Accordingly, Count I of the Plaintiff's claim for discrimination arising from her July 2005 transfer does not survive the Defendant's Motion for Summary Judgment.

## II.     Count II – Denial of Educational and Training Opportunities in July 2005

"To establish a prima facia case of discriminatory denial of training, a Title VII Plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649-50 (4th Cir. 2002) (citations omitted). Wilcox alleges that the Defendant discriminated against her on the bases of her gender in denying her the opportunity to attend a Fire Inspector I Class and a John Hopkins University graduate program.

As an initial matter, Plaintiff's opposition to the Defendant's motion does not address her discrimination claim with regard to the denial of the Fire Inspector I Class while Plaintiff served as the Executive Assistant to Lieutenant Colonel Blue. Nevertheless, the record clearly demonstrates that Defendant merely asked Wilcox to reschedule, rather than denied, the training because Blue would be out of town on the date of the class and needed Wilcox to cover the office in Blue's absence. (Pl.'s Dep. 43:13-44:21 ; Blue's Dep. 53:20-54:10.) The Defendant argues that it had a legitimate business reason in having Wilcox cover the office in Blue's absence because as Wilcox testifies in her deposition, she filled in for Blue in her absence. (Pl.'s Dep. 31:16-18.) Accordingly, the Court finds that there is no reasonable inference that Defendant's delay of the Fire Inspector I Class was in any way motivated by a discriminatory animus.

Plaintiff's opposition to the Motion for Summary Judgment focuses on her claim that the Defendant discriminated against her in placing a hold on her application to the John Hopkins University Graduate Fire/EMS Executive Leadership Program. The program is wholly separate from the Defendant's Fire Department. The admissions criterion, established by the University requires in relevant part that applicants hold a supervisory position at a Fire/EMS department and obtain a letter of endorsement from their department's chief. Defendant contends that Plaintiff's affiliation with the department was questionable because her separation from the department was pending at the time that she requested the letter of endorsement from Fire Chief Sedgwick. Thus, Defendant argues that Plaintiff has not shown that she was eligible for the program. The Court is not convinced that the Defendant has met its burden for summary judgment concerning Plaintiff's eligibility for the program, especially where Plaintiff remained with the department ten months after her request. What is clear, however, is that the Plaintiff fails to show that she was denied the training under circumstances that give rise to an inference of discrimination based on her protected class. This claim is for discrimination based on gender, and Defendant argues, that both male and female employees of the department attended the program while employed by the defendant. However, unlike Wilcox, none of the employees, either male or female, who attended the program were on light duty status or had pending retirement proceedings against them. Therefore, Plaintiff fails to show that the denial of the John Hopkins' program gives rise to an inference of discriminatory motive based on Plaintiff's gender.

## III.    Count III – Retaliation

Title VII prohibits discrimination against an employee who "has opposed any employment practice made unlawful by [Title VII], or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that she

engaged in protected activity; (2) the defendant took action that would be "materially adverse to a reasonable employee or job applicant; and (3) a causal connection existed between the protected activity and the asserted adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *James*, 383 F.3d at 188. As with a discrimination claim, an employer may rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual. *Munday v. Waste Mgmt. of N. Amer., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997); *see also McDonnell Douglas Corp. v. Gren*, 411 U.S. 792 (1973). An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S.Ct. at 2415. In order to establish a casual connection, the plaintiff must show that the adverse employment action took place after the filing of the discrimination claim. *Id.* Moreover, "a plaintiff claiming retaliation must establish that the employer had knowledge of the protected activity in order for its subsequent adverse employment actions to be retaliatory." *Shields v. Fed. Exp., Corp.*, 120 Fed. Appx. 956, 962 (4th Cir. 2005).

Here, only Plaintiff's retaliation claim with respect to the alleged denial of training and education opportunities in July 2005 remain in this case. The Court, in its Memorandum Opinion on the Motion to Dismiss (Doc. No. 14), concluded that the retaliation claim based on her transfer was not cognizable because it lacked the necessary casual link to her complaint of discrimination and the Court will not consider any arguments made in regard to retaliation for the July 2005 transfer. Defendant concedes that Plaintiff satisfies the first element of her retaliation claim but argues that she fails on the last two elements. Plaintiff counters that she has offered sufficient evidence to make out a prima facie case for retaliation regarding the alleged

denial of the opportunity to apply for the John Hopkins graduate program and to attend the Fire Inspector I Class.

Plaintiff first contacted her employers EEO officer on July 1, 2005, to make a claim of discrimination.  She asks this Court to infer that Fire Chief Sedgwick and Lieutenant Colonel Blue were immediately made aware of this compliant.  However, with regard to the John Hopkins Program, a review of the discovery material filed with the Court shows that Wilcox contacted the EEO officer after she received notice that her application was being placed on hold pending review of her separation status from the department.  In a July 6, 2005, memo to the EEO officer, Wilcox explained that on July 1, 2005, she received the documentation she submitted for the Hopkins program with a note attached saying that the application was on hold and that she "then contacted [the EEO] office to request a meeting with [Jones]."  (Def.'s Ex. 1, 8).  Therefore, the Defendant's decision to place Plaintiff's Hopkins application on hold appears to have been made before Plaintiff took any steps to make a complaint of discrimination. Accordingly the Court does not find any retaliatory conduct concerning the denial of the John Hopkins' program.

Furthermore, the Plaintiff argues that Lieutenant Blue's decision to repeal her prior approval for Plaintiff to attend a Fire Inspector I class in mid-July 2005 was in retaliation for Plaintiff filing an internal EEO complaint.  Plaintiff only argues that she meets the second prong because she was denied training for which she was eligible.  However, this conclusory statement does not demonstrate that the alleged denial was materially adverse.  In fact, as Defendant notes, Plaintiff was promoted to the rank of Captain shortly after being unable to attend the Fire Inspector I Class and that Defendant informed Plaintiff that she could reschedule the training at a later time.  Even if the Court were to accept Plaintiff's inference that Lieutenant Colonel Blue

had notice that she contacted the EEO officer on July 1, 2005, Defendant has sufficiently shown a legitimate business reason in having Plaintiff cover the office in her supervisor's absence. Plaintiff has not presented any cogent arguments that this reason is merely pretext.  Therefore, Count III of Plaintiff's claim does not survive the summary judgment motion.


## CONCLUSION

For the foregoing reasons, the Court holds that there are no genuine issues of material fact in Plaintiff's discrimination and retaliation claims.  Therefore, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Strike (Doc. No. 30) **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 25.)  A separate Order shall follow.


December 21, 2009                                          _____/s/_____
      Date                                          Alexander Williams, Jr.
                                                          United States District Court Judge